(35 South. 264.)

No. 14,737.

NORTH LOUISIANA BAPTIST ASS'N v. MILLIKEN.*

(June 8, 1903.)

ACTION BY ASSOCIATION—EXECUTIVE BOARD —AUTHORITY—CONTRACTS.

1. Plaintiff's suit was properly brought in the name of the association, authorized under its charter to sue; a right it could not divest itself of by attempting to transfer it to an executive board.

2. There was no quorum of the executive board present participating and voting on the proposition to make an exchange of immovable property of the association. The ordinance to that end was not legally adopted.

3. The executive board was without authority to transfer the property of the association differently from what the association had decided.

4. The executive board was only the agent of the association from which it derived its authority.

5. Notice sufficient was given to warn defendant against attempting to transact with the executive board of plaintiff association.

(Syllabus by the Court.)

Appeal from Ninth Judicial District Court, Parish of East Carroll; Francis Xavier Ransdell, Judge.

---

*Rehearing denied November 16, 1903.

Action by the North Louisiana Baptist Association against James S. Milliken. Judgment for defendant, and plaintiff appeals. Reversed.

Jeff. B. Snyder and George Spencer (McEnery, Dodds & Boatner, of counsel), for appellant. William M. Murphy and Joseph Medicus Kennedy, for appellee.

BREAUX, J. This is a suit to annul and set aside an act of exchange entered into between plaintiff and defendant on a number of grounds; among them, that the act of exchange was unauthorized by the plaintiff corporation, and that it (plaintiff) suffered lesion beyond moiety in the exchange.

The want of authority—first ground here mentioned—rests upon the averment that the meeting of the executive board appointed by plaintiff corporation was not held according to the terms of the charter, and did not, for that reason, bind the corporation; that a quorum of the executive board was not present at the meeting authorizing the contract of exchange to be made; and that this board's action in entering into this contract of exchange was ultra vires.

The facts disclose that plaintiff is the North Louisiana Baptist Association, an association of negroes, whose members are, as the name of the association indicates, members of the Baptist denomination.

They owned two parcels of land at Tallulah, in Madison parish, which cost them $4,600.

Their executive board is composed of thirteen members; seven of whom, the charter provides, constitute a quorum.

The defendant transferred to plaintiff, in exchange for their property just mentioned, his property (consisting of land and dwelling thereon fronting on Lake Providence, opposite the town of that name), and the payment, in addition, by plaintiff to defendant, of the sum of $4,000 to equalize values, in accordance with the terms agreed upon between the parties.

Plaintiff's contention is that there were only six members (less than a quorum) of the executive board of the plaintiff association present when the contract of exchange was agreed upon, while defendant's contention is that the seven required for a quorum were present.

A preponderance of the testimony is that one of the members, whose name is Bell, did not vote at all, and that he persistently opposed acceptance of the contract.

There is quite a conflict in the testimony as to whether he was in the room in which the meeting was held at the time that the terms and conditions of exchange were declared accepted by the chairman of the board.

There is a feud among the members of the association over the transaction, which seems to have muddled the proceedings very much. The necessity of a calm, deliberate action in a matter of importance was evidently forgotten in the confusion.

A preliminary question presents itself for decision, brought up by exception, in which defendant challenges plaintiff's right to bring the suit, because not authorized by the executive board of the association, the body in authority under the charter of the corporation.

After reading this ground to dismiss the suit, we turned to the charter, and found that it contains the usual clause authorizing the corporation to sue and be sued. If this authority is, by some other declaration in matter of this corporation, restricted in any manner to the will of the executive board of the association, the restricted right has not been sufficiently pointed out to us to justify us in dismissing the suit.

The suit was brought in the name of the association, and nothing indicates that this was done without its authority.

We sustain the action of the district court overruling this exception.

We come to the question of quorum vel non present and voting at the meeting of the executive board held at St. Joseph on March 29, 1901.

The seventh member of the board was present part of the time while the members were talking about the proposed exchange of the property before mentioned. It may be that he was present all the time, although the evidence upon the subject is very conflicting. It is a disputed point as to the precise time, during the talk of the members, he left the room.

The minutes, or what purports to be the minutes, contain the statement that he was present and voted.

A number of witnesses testified that he

was present; others (a large number) that he was not; that he left the room just prior to the voting. If this member of the board (Bell) was present, it is abundantly shown that he did not participate in the meeting by voting.

The secretary pro tem., Cook, by whom the minutes were written, is at variance with the number of witnesses. He testifies that he (Bell) was present, but he did not testify that Bell voted. In that respect he does not sustain his own minutes, containing the statement that he was present and voted.

Be all this as it may, the members of the executive board were the agents of the plaintiff association to carry out this particular purpose of exchanging or selling the real estate.

Title to real estate must have a basis more substantial than the proceedings seem to have been. There should be no question as to whether or not the member making the quorum was or was not present. If he withdrew, so as to leave no quorum, the power to act would seem to cease.

This is the view expressed by Mr. Dillon in his work on Municipal Corporations (4th Ed.) § 283.

In fact, the proceedings have an appearance of irregularity throughout. The meeting was called to order and organized, and even as to this it remains in doubt whether or not there was a quorum. The ubiquitous member of the board who was in and out, the man Bell, testifies that he came in after the board had organized by electing officers in place of those who were absent.

The members of the board and the officers of the plaintiff association are all negroes, we understand, and not familiar with the regular methods of conducting business.

Unquestionably, in our view, the specified number must join in the performance of the act of voting in order to give the ordinance disposing of the property validity.

To illustrate, if three constituting a quorum of a board be present, and one of the number, differing radically from his fellow directors of the board, refuse to act, rush out, as Bell says he did, not to be counted, or, if he remain, as Bell says he did not, there would still be no quorum in a matter of business.

The fact that Bell, in this instance, may have left precipitately with his faded umbrella in one hand and his hat in the other, as mentioned by some of the witnesses, adds nothing to the issues of the cause, and naught to the impressiveness or significance of the act.

He did not vote, and declined to take part in the proceedings. This suffices to break the quorum.

We take it that the issues are limited to resolution of the executive board of March, 1901. This is the motion or resolution which is expressly referred to in the deed to the defendant.

There is a motion or ordinance of a prior date, which was referred to in the deed made by the executive board to defendant. It was a motion, or ordinance, passed with the view of selling to defendant. It was not accepted by the latter. We therefore will not refer to this last motion or ordinance any further.

We take up, in the next place, for decision the ground urged by the defense that the executive board was without power to sell plaintiff's immovable property. The contention of plaintiff is that the directors had no power to sell unless specially granted. That here not only the association had not delegated to its executive board the power to sell, but that it had at its annual meeting last held made other disposition of the property than that which the executive board was attempting to make.

We observe, in reading the charter, that the power which it seeks to confer upon its executive board is broader than usually conferred by charter.

The defense based upon this broad grant of power to the executive board is that this board is invested with all the power of the corporation; that the corporation has no power whatever, save that which the executive board may choose to exercise; that even the power to sue rests with this executive board.

It suggests itself to us to say that incorporators should bear in mind that the franchise is granted by the state to the corporation. The corporation cannot divest itself of all power. Its boards and committees must look to the corporation from which they

emanate for their power to act. They cannot, in general terms, be given powers to control and dispose of property without regard to the will of the association itself. They cannot act in direct opposition to the expressed instruction of their principal, and against its expressed will, as in this case. They are only agents, with no power which the principal cannot, in proper proceedings, recall.

The association has some rights. This action of the association to sell property differently from what the executive board proposed was taken in proceedings participated in by six of the seven members of this executive board, and was binding upon that board. This board was without authority to enter into a contract of exchange which was inconsistent with the action taken by the association. They must be held bound by the will of the association, of which they are members, and of which they became the agents and servants at the time they consented to serve on the executive board.

It appears somewhat hard that defendant should be affected in his interest because of these irregular proceedings of plaintiff association and its executive board.

We would give effect to this fact were it not that defendant was informed by counsel some time prior to the date of this exchange, and notified that he had been retained by a number of the members of plaintiff to protest against the sale or exchange of the association property on the ground that the board was not authorized to make an exchange.

Although the notice was not given in the name of the association, yet this notice from some of its members, through their attorney, was sufficient to place defendant upon inquiry.

The question of lesion is passed by by us without deciding it. Other issues decided dispose of the case.

For the reasons assigned, the judgment appealed from 'is avoided, annulled, and reversed.

It is now ordered, adjudged, and decreed that the deed from Garther et al., assuming to act for plaintiff corporation, to James S. Milliken, dated April 10, 1901, passed before John Montgomery, notary public and recorder, be rescinded and declared null, and the same be canceled as such from the record of the clerk's office.

Defendant to pay costs of both courts.