## UNFAIR MEANS OF SECURING ATTENDANCE OF A DIRECTOR AT A BOARD MEETING.

Superior Court of Cincinnati.

McLEAN E. REMELIN v. HERMAN BUMILLER, THE BUMILLER-REMELIN COMPANY, ANNE BUMILLER AND ALBERT KLEYBOLTE.

Decided, March, 1914.

*Corporations—Director Trapped Into Attendance at Board Meeting— Action of Majority of Quorum Must be Disinterested—Injunction Against Putting Into Effect Measures Adopted by an Interested Minority.*

1. A director of a private corporation can not be trapped into a meeting of the board of directors by fraud or misrepresentation; and though a meeting of such board is held at a time fixed by the by-laws, yet if his presence is necessary to make a majority and if his presence was obtained in the manner indicated, the meeting is illegal, and resolutions passed at such meeting are void and of no effect.

2. It is necessary to the validity of an act of the board of directors of a private corporation that a majority of the quorum of the board shall be disinterested in respect to such act. If a director is personally interested in such act he is disqualified from participating in it, and can not be counted in estimating a quorum.

*Peck, Shaffer & Peck* and *Floyd C. Williams*, for plaintiff.
*Horstman & Horstman*, contra.

OPPENHEIMER, J.

This a proceeding in equity to enjoin defendants from putting into effect certain resolutions which were passed at an ostensible meeting of the board of directors of the Bumiller-Remelin Company, held at the office of that company on January 5th, 1914.

The petition alleges that the plaintiff, together with his wife and one C. Lee Downey, are the owners of one-half of the common stock of the Bumiller-Remelin Company, and that de-

fendants, Herman Bumiller, Anne Bumiller and Albert Kleybolte, are the owners of the other half, and that the said six persons constitute the board of directors of said company. It is further alleged that since the organization of said company in 1908, no meetings of the board of directors had ever been held, and that it was agreed between plaintiff and Herman Bumiller, who are in reality the owners of the outstanding common stock, that no formal meetings of said board of directors were necessary, and that no meetings should be held except upon notice to all the directors, but that contrary to said agreement, the defendants, Herman and Anne Bumiller and Albert Kleybolte, conspired unlawfully to deprive plaintiff of his interest in the company and of the salary which he received as secretary of said company, and that pursuant to such conspiracy they arranged to hold a meeting without giving notice thereof to plaintiff, his wife or Downey, and that in pursuance to said conspiracy they secured plaintiff's attendance by a false pretense that his presence was desired in the office of said company for other purposes, and that having thus procured his attendance they proceeded to pass resolutions depriving him of his employment by said defendant company, reducing his salary from $2,600 per annum to $60 per annum, and that they then proceeded to issue four shares of capital stock to said Herman Bumiller at the par value of $100 per share, although the real value was in excess of $200 per share. Plaintiff further alleges that he has no adequate remedy at law and that the rights of himself and other stockholders have been prejudicing by the actions of defendants, and asks that they be enjoined as heretofore stated.

To plaintiff's petition defendants have filed an answer in which they set out that the capital stock of said corporation is $50,000, of which $20,000 is preferred stock and the balance common stock, and that of said common stock $20,000 has been issued at par, as follows: Herman Bumiller, 98 shares; Anne Bumiller, 1 share; Albert Kleybolte, 1 share; McLean E. Remelin, 98 shares; Mrs. M. E. Remelin, 1 share; C. Lee Downey, 1 share. Defendants further state that the by-laws of the corpora-

tion provide that regular meetings of the directors of said company shall be held on the first Monday of January, April, July and October of each year at 4 o'clock P. M.; that after the organization of said company in the year 1908, at a meeting of the board of directors the salary of Herman Bumiller and McLean E. Remelin was fixed at $50 per week each, and that said Herman Bumiller was designated as general manager to take charge of the business of said company, employ the necessary heads of departments, and perform all other duties required of him by the board of directors; that on the first Monday of January, 1914, which is the date of the alleged meeting set out in plaintiff's petition, a meeting of the board of directors was held at the office of said company, a majority of the directors being present, and that the resolutions referred to in plaintiff's petition were duly presented and adopted by said board, a majority of said board being at all times present and a majority of said majority voting in favor of each resolution. Included in said answer is an account of the proceedings of said alleged meeting, which it is said, said defendants Herman and Anne Bumiller and Albert Kleybolte have signed and certified as the correct minutes of the proceedings of said meeting of the board of directors. Said defendants admit that the meeting was prearranged by them, but allege that it was not necessary for them to give notice to the other directors of their purpose to hold this meeting, which was provided for by the by-laws of the corporation, and deny that it was a conspiracy upon their part to deprive plaintiff of any of his rights. They further allege that plaintiff was present and acted as secretary of the meeting, and charge that their action was the result of long continued gross neglect by plaintiff of his duties as an employee of the corporation. They further allege that part of the consideration for the issuing of four shares of common stock at par to Herman Bumiller was extraordinary service rendered by said Herman Bumiller to the corporation, such service being required largely by plaintiff's failure to perform his duties in the proper manner, and that the consideration for such stock is therefore fair and reasonable. Defendants deny all other allegations of plaintiff's petition and ask for the dismissal thereof.

The testimony in the case has been quite voluminous. It indicates that in 1908 said Herman Bumiller and McLean E. Remelin entered into an agreement to purchase the sporting goods department of the Pickering Hardware Company, a corporation which had for many years been engaged in business in this city; that for the purpose of properly handling the deal, a corporation was formed, of which corporation plaintiff and said Herman Bumiller were to have equal control. Each one contributed $5,000 in cash to the business, and in consideration of such contribution and the turning over to the corporation of the option secured by them from the Pickering Hardware Company, there was issued to each one the sum of $10,000 in common stock. No other common stock was to be issued, and the stock so issued to them was to be divided in the manner indicated in the answer, so that each one might have an equal voice in the management of the affairs of the corporation and an equal vote in the board of directors. Preferred stock bearing seven per cent. interest was issued to the amount of $15,000, but a portion of this has been retired, leaving $12,300 of preferred stock outstanding. By agreement, Herman Bumiller was to be elected president and McLean E. Remelin secretary and treasurer, and their salaries in their respective capacities were to be the same, to-wit, fifty dollars per week. Herman Bumiller was designated as general manager by the board of directors, but it is not clear that there was any difference in the authority of Bumiller and Remelin respectively in the management of the business. It seems that they have conferred from time to time, consulting with each other concerning the employment of help in the conduct of the business, and that the management of the automobile supply and accessory department was entrusted entirely to Bumiller, and the management of the sporting goods department to Remelin. Bumiller testifies that he became dissatisfied with Remelin's conduct about three years ago, and that from time to time he talked with him concerning it, but Remelin, on the other hand, testifies that there were no serious difficulties between them until very recently. It is clear, at any rate, that no meetings of the board of directors were held from the time

when the company was organized until January 5th of this year, a period of more than five years. It appears also that no notice of any intention to hold a meeting was given during that period of time, although it is apparent that occasionally some one of the board of directors would mention the fact that no meeting had been held and perhaps inquire the reason therefor. It is apparent to the court that the only reason for such neglect to hold meetings was that no necessity therefor was apparent to anyone, as the affairs of the company were prosperous. Indeed the history of the corporation is somewhat remarkable. Starting with an investment of $10,000, as heretofore stated, they were able to show a record of gross sales in 1909 aggregating approximately $108,000, which were increased from year to year, and aggregated in 1913 more than $168,000. While no complete inventory has ever been taken, plaintiff estimates the value of the stock on hand at $48,103, and although Bumiller testifies that this statement is doubtless excessive, yet it is clear that the stock is large and of considerable value. Plaintiff further testifies that in his opinion the book value of each share of common stock, taking into consideration the value of the good-will of the business, is in excess of $300; but defendant Bumiller is of the opinion that this also is excessive. Defendant contends that the cost of conducting the business has increased considerably during the past year, and that this will also affect the value of the stock; and that competition, either present or prospective, will ultimately further reduce its value. So far as the increase in expense is concerned, it may be said that such increase was but natural in view of the higher price of labor, the necessity for more extensive advertising, and other items concerning which testimony was received.

But after all allowances have been made, it is apparent to the court that the business is profitable and that it is decidely unfortunate that such disputes as these should have arisen between those who were conducting the business.

There is no great discrepancy in the testimony concerning that which transpired immediately before and at the time of the meeting on January 5th, of this year. On or about November

25th, 1913, defendant Bumiller consulted his counsel and explained to him the differences of opinion which had arisen. Shortly thereafter the scheme which was put into operation on January 5th, 1914, was conceived. It was planned to arrange for a meeting to be held on that date at which defendants Herman and Anne Bumiller and Albert Kleybolte were to be present, but of which plaintiff, and the other directors who were known to be disposed to support him, were to receive no notice. Three resolutions were prepared in advance by counsel, the first of which was designed to oust plaintiff from his position as an employee of the company and to reduce his salary as treasurer from $50 per week to $5 per month. The second resolution provided for the issuing of four shares of the common stock at par to Bumiller, and the third resolution was designed to require the repayment by plaintiff to the corporation of certain overdrafts on his salary which had been made by him. The court is led further to believe by the testimony that the minutes of this meeting were prepared in advance by counsel, or at least that an outline of the proceedings was prepared so that the preconceived program might be properly carried out. On the afternoon of January 5th at about 3:45 o'clock Mrs. Bumiller and Kleybolte appeared at the store and went to the office in company with Bumiller. As the clock approached the hour of 4 o'clock, Minning, the assistant bookkeeper of the company, under the direction of Bumiller, called plaintiff upon the house phone and stated that his presence was desired in the office by Bumiller for the purpose of checking over certain outstanding accounts. In response to this call plaintiff appeared in the office and greeted Mrs. Bumiller whom he had not previously seen. He was then informed that a meeting of the board of directors was being held, it being the time appointed therefor by the by-laws, but that as no business of importance was to be transacted but a few minutes would be required. He asked if such action was legal and was informed that it was. Plaintiff then took a pad or piece of paper and began to make notes, the exact nature of which can not be determined from the evidence, while Kleybolte drew from his pocket the previously prepared

resolutions and handed them to Bumiller, who proceeded to read them.    Plaintiff entered an emphatic protest, saying that things should not be "railroaded through" in that manner, and asked that the vote upon those resolutions be postponed until the other directors might be notified to be present.    This request was refused, and in spite of his protests the resolutions were passed, Mrs. Bumiller and Kleybolte voting in the affirmative upon each resolution.    The meeting was thereupon adjourned.    Thereafter the bank was notified that no checks signed by Remelin were to be honored, the lock upon the store was changed, and plaintiff was denied admittance thereto.

Plaintiff immediately consulted counsel, and a meeting was arranged with defendants and their counsel.    At this meeting the suggestion was made that an inventory be taken and plaintiff's interest be purchased at a valuation to be shown by such inventory.    This suggestion was rejected, largely because the taking of an inventory would require a considerable length of time, and meanwhile plaintiff was to be deprived of any right to participate in the business affairs of the company. Bumiller then offered plaintiff $110 per share for his stock. Plaintiff refused to accept this offer, but made a counter-offer to Bumiller of $150 per share for his holdings and agreed to sell his own holdings at the same price.    This offer was rejected by Bumiller, and the petition in this case was then filed.

The mere statement of the foregoing facts would, it seems to us, necessarily carry with it the answer to the question which the court is asked to determine.    Corporate business and powers are conducted and exercised by a board of directors, who are elected in accordance with statutory requirements and who serve for a period fixed by the by-laws or regulations of the corporation or until their successors are elected and qualified.    Ordinarily the courts will not interfere with the manner in which the directors conduct the affairs of a corporation, but they are bound to exercise perfect good faith in dealing therewith.    *Peter* v. *Mfg. Co.,* 56 O. S., 181.; *Railway* v. *Kleybolte,* 5 N.P.(N.S.), 536.

The majority of the directors of a corporation constitutes a board which is empowered to transact the affairs of the corpora-

tion (General Code Ohio, Section 8664; 2 Thompson on Corporations, 2d Edition, Section 1150). Where the time and place of meeting of the board of directors are fixed by some by-law or regulation of the company, no notice of such meeting is ordinarily necessary (2 Thompson on Corporations, 2d Edition, Section 1131). And when a meeting of the board of directors is properly held, a quorum being present, a majority of such quorum may ordinarily pass such resolutions and transact such business as may come before it, even though such majority be not in fact a majority of the entire board of directors (3 Cook on Corporations, 7th Edition, Section 713a; *Sargent* v. *Webster*, 13 Metc. [Mass.], 497; *Gumaer* v. *Cripple Creek Company*, 40 Colo., 1).

It is essential, however, that the meeting be one which all directors have had the privilege of attending. A mere accidental assembly of the majority of the persons who constitute the directors of a corporation does not make a legal board (2 Thompson on Corporations, 2d Edition, Section 1153). And the majority must be present without fraud or attempt at surprise. *Lookwood* v. *Bank*, 9 R. I., 308; *Trandley* v. *Railroad*, 241 Mo., 73.

In the case last cited, the court says (page 94):

"There is no legal process by which a director of a private business corporation can be forced to attend a meeting, and he can not lawfully be compelled by physical force to attend nor can he be entrapped into an attendance against his will."

Applying the principles just stated to the facts in the case at bar, we are constrained to hold that the meeting of the defendant corporation held on January 5th, 1914, was illegal, and that the resolutions passed at said meeting were null and void. No meeting had been called for more than five years, and there is nothing in the testimony to indicate that plaintiff had any reason to believe that the meeting was to be called. Indeed the testimony—particularly that of Bumiller and his wife—indicate that the arrangements for the meeting were surreptitiously made, and it was expressly desired that no notice there-

of be brought to the attention of the plaintiff or his associate directors. Mrs. Bumiller states that she was notified of the meeting several days, or perhaps a week before it was held; that she knew in a general way what action was contemplated; that copies of the proposed resolutions were handed to her so that she might familiarize herself with them; that her husband stated to her that he desired to get plaintiff out of the business and that she knew that was the purpose of the meeting; and that she understood that neither Mrs. Remelin nor Mr. Downey would be notified of the meeting and did not expect them to be there. This testimony is not merely supported by the testimony of the other defendants, but is also borne out by all the circumstances of the case. And when the time for the proposed meeting actually arrived, the attendance of the plaintiff was not even left to chance; his presence was secured by a deliberate misrepresentation which indicated a total absence of that good faith and honesty which are absolutely essential to the proper conduct of the affairs of any corporation. When defendant Bumiller, in the course of his cross-examination, was asked whether he had told Minning to call plaintiff to the office for the purpose of looking over old accounts, he admitted that he did so. He further admitted that when Remelin actually came to the office in response to this call, he said nothing about any old accounts, but proceeded to tell him that a meeting had been called. When asked why he did not say anything about the old accounts he replied: "That was my business." And when asked, "You want the court now to understand that it is your business why you said nothing about the old accounts?" he replied in the affirmative.

This is scarcely the attitude which should be assumed by one who is asking a court of equity to place its stamp of approval upon his actions. The court is justified in expecting litigants to be frank and fair; and it can not be favorably impressed with a story told by a witness who refuses to offer any explanation for an equivocal act save that the reason therefor was "his own business" with which the court could not be concerned. Indeed the actions of defendants throughout manifest a lack of

that integrity and good faith which are entering more conspicuously into the conduct of modern business. Defendants manifestly sought to carry out their unconscionable plan without interference, and they knew that if notice of the meeting of January 5th were given to plaintiff or to his co-directors, their plans would be thwarted. They therefore resorted to methods which do not appeal to the conscience of this court, and if the rights of directors and stockholders are to be protected, the duty of the court is plain. We shall not dignify defendants' contention by citing authorities to show that a court of equity has this power.

The action of defendants in attempting to issue to Bumiller common stock at par is another evidence of the highhanded and unprincipled manner in which they were determined to proceed. Bumiller's action in subsequently offering $110 per share for the stock held by plaintiff indicates that he himself admitted that the value was in excess of $100; and the allegation of the answer that extraordinary service rendered by him to the corporation was part of the consideration for the transfer of the stock, was evidently an afterthought, for no mention of extraordinary service was made in the resolutions which were so carefully prepared before the meeting was held, nor is there any evidence to indicate that anyone thought of such extraordinary service at the time when the transfer was attempted. Moreover, the offer made by plaintiff and his counsel, both before and during the trial to pay Bumiller $150 per share for his stock is further evidence of the true value thereof.

Even if we were to assume that the meeting was properly held, this action of the board could not be sanctioned. It is essential that a majority of those constituting a quorum of the board of directors of a corporation shall be disinterested in respect to the matters which they vote upon, and as Bumiller's own vote was necessary to pass this resolution, it was absolutely void. 1 *Beach on Corporations*, Section 276; 2 *Thompson on Corporations*, 2d Edition, Section 1157; *Smith* v. *Association*, 78 Cal., 289; *Miller* v. *Ice Company*, 93 Mich., 97; *Copland* v. *Manufacturing Company*, 47 Hun., 235.

It will be noticed that we do not refer to plaintiff's testimony that he refused to vote upon the resolutions presented, and to the contention of his counsel that the result of his refusal was to leave the meeting without a quorum. It has been held that a director who is present, but does not vote, is properly counted in the negative (*Commonwealth* v. *Wickersham,* 66 Pa. St., 134; *Carr* v. *Rochester Company,* 207 Pa. St., 392; *Stephany* v. *Glass Works,* 76 N. J. L., 449). Other cases have held that a director who is present but who refuses to participate in the proceedings can not be counted as a part of the quorum (*North Association* v. *Milliken,* 110 La. 1002). As to this matter we hold merely that where the attendance of a member is obtained by fraud, misrepresentation or deceit, and where, as in this case, he protests against the proposed action of the board, he can not be counted as present. Defendants have testified that no attempt was made by anyone to prevent plaintiff from leaving the room in which the alleged meeting was held. We are not surprised that when plaintiff found what was being done, he remained to protest in preference to leaving defendants to their own machinations.

Judgment that the temporary restraining order heretofore entered in the case be made permanent, and that defendants be restrained from putting into operation, force or effect, the resolutions and proceedings of the alleged meeting of the board of directors of defendant company held on January 5th, 1914, and that plaintiff be restored in all respects to the position held by him with The Bumiller-Remelin Company prior to said alleged meeting.